1  LERACH COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2  SHAWN A. WILLIAMS (213113)
   100 Pine Street, Suite 2600
3  San Francisco, CA 94111
   Telephone: 415/288-4545
4  415/288-4534 (fax)
   shawnw@lerachlaw.com
5        -- and --
   WILLIAM S. LERACH (68581)
6  DARREN J. ROBBINS (168593)
   TRAVIS E. DOWNS III (148274)
7  655 West Broadway, Suite 1900
   San Diego, CA 92101
8  Telephone: 619/231-1058
   619/231-7423 (fax)
9  billl@lerachlaw.com
   darrenr@lerachlaw.com
10 travisd@lerachlaw.com

11 Attorneys for Plaintiff

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                   SAN JOSE DIVISION

15 JOHN J. RANIERI, Derivatively on Behalf of  )  No. C 06 6906
   SIGMA DESIGNS, INC.,                        )
16                                             )
                       Plaintiff,              )  VERIFIED SHAREHOLDER DERIVATIVE
17                                             )  COMPLAINT FOR VIOLATION OF THE
        vs.                                    )  FEDERAL SECURITIES LAWS AND
18                                             )  STATE LAW CLAIMS FOR BREACH OF
   THINH Q. TRAN, SILVIO PERICH, KIT           )  FIDUCIARY DUTY, ABUSE OF
19 TSUI, KENNETH A. LOWE, JACQUES              )  CONTROL, CONSTRUCTIVE FRAUD,
   MARTINELLA, WILLIAM J. ALMON,               )  CORPORATE WASTE, UNJUST
20 JULIEN NGUYEN and LUNG C. TSAI,             )  ENRICHMENT, GROSS
                                               )  MISMANAGEMENT, ACTION FOR
21                     Defendants,             )  ACCOUNTING AND VIOLATIONS OF
                                               )  CALIFORNIA CORPORATIONS CODE
22        -- and --                            )
                                               )
23 SIGMA DESIGNS, INC., a California           )
   corporation,                               )
24                                             )
                       Nominal Defendant.      )
25 _____  )  DEMAND FOR JURY TRIAL

26

27

28

**NATURE OF THE ACTION**

1.     This is a shareholder derivative action brought by a shareholder of Sigma Designs, Inc. ("Sigma Designs" or the "Company") on behalf of the Company against its Board of Directors and certain of its senior executives (collectively, "Defendants").  This action seeks to remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement, arising out of a scheme and wrongful course of business whereby Defendants allowed senior Sigma Designs insiders to divert hundreds of millions of dollars of corporate assets to themselves via the manipulation of grant dates associated with hundreds of thousands of stock options granted to Sigma Designs insiders.  Each of the Defendants also participated in the concealment of the backdating option scheme complained of herein and/or refused to take advantage of the Company's legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained incentive compensation and proceeds diverted to them since 1997.

2.     Between fiscal 1997 and 2005, Defendants also caused Sigma Designs to file false and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy Statements filed with the SEC which stated that the options granted by Sigma Designs carried with them an exercise price that was ***not less than*** the fair market value of Sigma Designs stock on the date of grant and issuance.

3.     In fact, Defendants were aware that the practices employed by the Board allowed the stock option grants to be ***backdated*** to dates when the Company's shares were trading at or near the lowest price for that relevant period.  By July 2006, Defendants' backdating scheme had yielded stock option grants to the Company's executive officers worth millions of dollars, which contributed to Defendants' ability to sell over $15.4 million worth of Sigma Designs stock.

4.     Sigma Designs' financial results as reported and filed with the SEC were false. Defendants' misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934 (the "Exchange Act"), as well as California law.  By authorizing and/or acquiescing in the stock option backdating scheme, Defendants. (i) caused Sigma Designs to issue false statements; (ii) diverted hundreds of millions of dollars of corporate assets to senior Sigma Designs executives;

1  and (iii) subjected Sigma Designs to potential liability from regulators, including the SEC and the

2  IRS.

3      5.    Defendants' gross mismanagement and malfeasance over the past decade has exposed

4  Sigma Designs and its senior executives to criminal and civil liability for issuing false and

5  misleading financial statements.  Specifically, Defendants caused or allowed Sigma Designs to issue

6  statements that failed to disclose or misstated the following: (i) that the Company had problems with

7  its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that

8  because of improperly recorded stock-based compensation expenses, the Company's financial results

9  violated Generally Accepted Accounting Principles ("GAAP"); and (iii) that the Company's public

10  disclosures presented an inflated view of Sigma Designs' earnings and earnings per share.

11      6.    Defendants' malfeasance and mismanagement during the relevant period has wreaked

12  hundreds of millions of dollars of damages on Sigma Designs.  The Company's senior executives

13  were incentivized to over-pay themselves, to profit from their misconduct by cashing in on under-

14  priced stock options and to issue false financial statements to cover up their misdeeds.  Defendants'

15  breaches of fiduciary duties in the administration of the Company's stock option plans so polluted

16  the plans with grant date manipulations so as to void all grants made pursuant to the plans.  The

17  Company has now been mentioned as one of several companies likely to have manipulated options.

18  Meanwhile, certain of the Defendants and former officers, who received under-priced stock options

19  and/or knew material non-public information regarding Sigma Designs' internal control problems,

20  abused their fiduciary relationship with the Company by selling over $15.4 million worth of their

21  personally held shares at artificially inflated prices during the relevant period.  This action seeks

22  recovery for Sigma Designs against these faithless fiduciaries, as Sigma Designs' Board of

23  Directors, as currently composed, is simply unable or unwilling to do so.

24                **INTRADISTRICT ASSIGNMENT**

25      7.    A substantial part of the events or omissions which give rise to the claims in this

26  action occurred in the county of Santa Clara and as such this action is properly assigned to the San

27  Jose division of this Court.

28

**JURISDICTION AND VENUE**

8.     The claims asserted herein arise under §14(a) of the Exchange Act, 15 U.S.C. §78n(a), and under California law for breach of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement. In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail and the facilities of a national securities market.

9.     This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1331. This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

10.     This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

11.     Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District. Sigma Designs is located in and conducts its business in this District. Further, Defendants conduct business in this District, and certain of the Defendants are citizens of California and reside in this District.

**PARTIES**

12.     Plaintiff John J. Ranieri is, and at all relevant times was, a shareholder of nominal defendant Sigma Designs.

13.     Nominal party Sigma Designs is a California corporation with its principal executive offices located at 1221 California Circle, Milpitas, California.

14.     Defendant Thinh Q. Tran ("Tran") has served as Chairman of the Board of Directors, President and Chief Executive Officer ("CEO") of Sigma Designs since 1982. Because of Tran's positions, he knew the adverse non-public information about the business of Sigma Designs, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance

1   at management and Board meetings and committees thereof and via reports and other information

2   provided to him in connection therewith.  During the relevant period, Tran participated in the

3   issuance of false and/or misleading statements, including the preparation of the false and/or

4   misleading press releases and SEC filings.  Based on his knowledge of material non-public

5   information regarding the Company, defendant Tran violated Cal. Corp. Code §§25402 and 25502.5

6   by selling 582,797 shares of Sigma Designs stock for proceeds of $6.1 million during the relevant

7   period.

8           15.     Defendant Silvio Perich ("Perich") has served as Senior Vice President, Worldwide

9   Sales since January 1992.  Previously, Perich served in a variety of senior executive positions since

10  joining the Company in 1985.  Because of Perich's positions, he knew the adverse non-public

11  information about the business of Sigma Designs, as well as its finances, markets and present and

12  future business prospects, via access to internal corporate documents, conversations and connections

13  with other corporate officers and employees, attendance at management meetings and via reports and

14  other information provided to him in connection therewith.  During the relevant period, Perich

15  participated in the issuance of false and/or misleading statements, including the preparation of the

16  false and/or misleading press releases and SEC filings.  Based on his knowledge of material non-

17  public information regarding the Company, defendant Perich violated Cal. Corp. Code §§25402 and

18  25502.5 by selling 230,000 shares of Sigma Designs stock for proceeds of $2.6 million during the

19  relevant period.

20          16.     Defendant Kit Tsui ("Tsui") has been Chief Financial Officer ("CFO") of Sigma

21  Designs since 2001, and has been employed at Sigma Designs in accounting positions since 1982.

22  Because of Tsui's positions, she knew the adverse non-public information about the business of

23  Sigma Designs, as well as its finances, markets and present and future business prospects, via access

24  to internal corporate documents, conversations and connections with other corporate officers and

25  employees, attendance at management meetings and via reports and other information provided to

26  her in connection therewith.  During the relevant period, Tsui participated in the issuance of false

27  and/or misleading statements, including the preparation of the false and/or misleading press releases

28  and SEC filings.

17.    Defendant Kenneth A. Lowe ("Lowe") has been Vice President, Business Development and Strategic Marketing of Sigma Designs since 2001. Because of Lowe's position, he knew the adverse non-public information about the business of Sigma Designs, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Lowe participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Lowe violated Cal. Corp. Code §§25402 and 25502.5 by selling 6,000 shares of Sigma Designs stock for proceeds of $64,893 during the relevant period.

18.    Defendant Jacques Martinella ("Martinella") has been a Vice President of Engineering of Sigma Designs since 1995. Because of Martinella's position, he knew the adverse non-public information about the business of Sigma Designs, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Martinella participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Martinella violated Cal. Corp. Code §§25402 and 25502.5 by selling 88,666 shares of Sigma Designs stock for proceeds of $947,641 during the relevant period.

19.    Defendant William J. Almon ("Almon") has been a director of Sigma Designs since 1994. Because of Almon's position, he knew the adverse non-public information about the business of Sigma Designs, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Almon

1  participated in the issuance of false and/or misleading statements, including the preparation of the

2  false and/or misleading press releases and SEC filings.  Based on his knowledge of material non-

3  public information regarding the Company, defendant Almon violated Cal. Corp. Code §§25402 and

4  25502.5 by selling 83,000 shares of Sigma Designs stock for proceeds of $1.09 million during the

5  relevant period.

6       20.    Defendant Julien Nguyen ("Nguyen") has been a director of Sigma Designs since

7  2000.  Because of Nguyen's position, he knew the adverse non-public information about the

8  business of Sigma Designs, as well as its finances, markets and present and future business

9  prospects, via access to internal corporate documents, conversations and connections with other

10 corporate officers and employees, attendance at Board meetings and committees thereof and via

11 reports and other information provided to him in connection therewith.  During the relevant period,

12 Nguyen participated in the issuance of false and/or misleading statements, including the preparation

13 of the false and/or misleading press releases and SEC filings.  Based on his knowledge of material

14 non-public information regarding the Company, defendant Nguyen violated Cal. Corp. Code

15 §§25402 and 25502.5 by selling 560,625 shares of Sigma Designs stock for proceeds of $4.4 million

16 during the relevant period.

17      21.    Defendant Lung C. Tsai ("Tsai") has been a director of Sigma Designs since 2003.

18 Because of Tsai's position, he knew the adverse non-public information about the business of Sigma

19 Designs, as well as its finances, markets and present and future business prospects, via access to

20 internal corporate documents, conversations and connections with other corporate officers and

21 employees, attendance at Board meetings and committees thereof and via reports and other

22 information provided to him in connection therewith.  During the relevant period, Tsai participated

23 in the issuance of false and/or misleading statements, including the preparation of the false and/or

24 misleading press releases and SEC filings.  Based on his knowledge of material non-public

25 information regarding the Company, defendant Tsai violated Cal. Corp. Code §§25402 and 25502.5

26 by selling 15,000 shares of Sigma Designs stock for proceeds of $157,700 during the relevant

27 period.

28

22.     The defendants identified in ¶¶14 and 19-21 are referred to herein as the "Director Defendants."   The defendants identified in ¶¶14-18 are referred to herein as the "Officer Defendants." The defendants identified in ¶¶14-15 and 17-21 are referred to herein as the "Insider Selling Defendants."

### DEFENDANTS' DUTIES

23.     Each officer and director of Sigma Designs named herein owed the Company and Sigma Designs shareholders the duty to exercise a high degree of care, loyalty and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of Sigma Designs' directors and officers complained of herein involves knowing, intentional and culpable violations of their obligations as officers and directors of Sigma Designs. Further, the misconduct of Sigma Designs' officers has been ratified by Sigma Designs' Board, which has failed to take any legal action on behalf of the Company against them.

24.     By reason of their positions as officers, directors and fiduciaries of Sigma Designs and because of their ability to control the business and corporate affairs of the Company, the Defendants owed Sigma Designs and its shareholders fiduciary obligations of candor, trust, loyalty and care, and were required to use their ability to control and manage Sigma Designs in a fair, just, honest and equitable manner, and to act in furtherance of the best interests of Sigma Designs and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  In addition, as officers and/or directors of a publicly held company, the Defendants had a duty to refrain from utilizing their control over Sigma Designs to divert assets to themselves via improper and/or unlawful practices.  Defendants also had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, earnings and compensation practices.

25.     Because of their positions of control and authority as directors or officers of Sigma Designs, each of the Defendants was able to and did, directly and indirectly, control the wrongful acts complained of herein. As to the Director Defendants, these acts include: (i) agreement to and/or acquiescence in Defendants' option backdating scheme; (ii) willingness to cause Sigma Designs to

1   disseminate false Proxy Statements for 1997-2005, which Proxy Statements failed to disclose

2   Defendants' option backdating scheme and omitted the fact that executive officers were allowed to

3   backdate their stock option grants in order to manipulate the strike price of the stock options they

4   received. Because of their positions with Sigma Designs, each of the Defendants was aware of these

5   wrongful acts, had access to adverse non-public information and was required to disclose these facts

6   promptly and accurately to Sigma Designs shareholders and the financial markets but failed to do so.

7           26.     Between 1997 and 2005, Defendants repeated in each Proxy Statement that the stock

8   option grants made during that period carried an exercise price that was not less than the fair market

9   value of Sigma Designs stock on the date granted, as calculated by the public trading price of the

10  stock at the market's close on that date. However, Defendants concealed until July 2006 that the

11  stock option grants were repeatedly and consciously **backdated** to ensure that the strike price

12  associated with the option grants was at or near the lowest trading price for that fiscal period. Due to

13  Defendants' breach of their fiduciary duty in the administration of the stock option plans, plaintiff

14  seeks to have the directors' and officers' plans voided and gains from those plans returned to the

15  Company. In the alternative, plaintiff seeks to have all of the unexercised options granted to

16  Defendants between 1997 and 2004 cancelled, the financial gains obtained via the exercise of such

17  options returned to the Company and to have Defendants revise the Company's financial statements

18  to reflect the truth concerning these option grants.

19          27.     To discharge their duties, the directors of Sigma Designs were required to exercise

20  reasonable and prudent supervision over the management, policies, practices and controls of the

21  business and financial affairs of Sigma Designs. By virtue of such duties, the officers and directors

22  of Sigma Designs were required, among other things, to:

23                  (a)     manage, conduct, supervise and direct the business affairs of Sigma Designs

24  in accordance with all applicable law (including federal and state laws, government rules and

25  regulations and the charter and bylaws of Sigma Designs);

26                  (b)     neither engage in self-dealing nor knowingly permit any officer, director or

27  employee of Sigma Designs to engage in self-dealing;

28

1    (c)    neither violate nor knowingly permit any officer, director or employee of

2  Sigma Designs to violate applicable laws, rules and regulations;

3    (d)    remain informed as to the status of Sigma Designs' operations, including its

4  practices in relation to the cost of allowing the pervasive backdating and improperly accounting for

5  such, and upon receipt of notice or information of imprudent or unsound practices, to make a

6  reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices

7  and make such disclosures as are necessary to comply with the U.S. federal securities laws and their

8  duty of candor to the Company's shareholders;

9    (e)    prudently protect the Company's assets, including taking all necessary steps to

10  recover corporate assets (cash, stock options) improperly paid to Company executives and directors

11  together with the related costs (professional fees) proximately caused by the illegal conduct

12  described herein;

13    (f)    establish and maintain systematic and accurate records and reports of the

14  business and affairs of Sigma Designs and procedures for the reporting of the business and affairs to

15  the Board of Directors and to periodically investigate, or cause independent investigation to be made

16  of, said reports and records;

17    (g)    maintain and implement an adequate, functioning system of internal legal,

18  financial and accounting controls, such that Sigma Designs' financial statements – including its

19  expenses, accounting for stock option grants and other financial information – would be accurate and

20  the actions of its directors would be in accordance with all applicable laws;

21    (h)    exercise control and supervision over the public statements to the securities

22  markets and trading in Sigma Designs stock by the officers and employees of Sigma Designs; and

23    (i)    supervise the preparation and filing of any financial reports or other

24  information required by law from Sigma Designs and to examine and evaluate any reports of

25  examinations, audits or other financial information concerning the financial affairs of Sigma Designs

26  and to make full and accurate disclosure of all material facts concerning, *inter alia,* each of the

27  subjects and duties set forth above.

28

28.     Each Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as directors of Sigma Designs, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders which Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Defendants who were also officers and/or directors of the Company during the relevant period has been ratified by the Director Defendants who comprised Sigma Designs' entire Board during the relevant period.

29.     Defendants breached their duties of loyalty and good faith by allowing or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein *infra*, and by failing to prevent the Defendants from taking such illegal actions. In addition, as a result of Defendants' illegal actions and course of conduct during the relevant period, the Company is now the subject of an investigation by the SEC. As a result, Sigma Designs has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

(a)     improvidently paid executive compensation;

(b)     increased capital costs as a result of the loss of market capitalization and the Company's damaged reputation in the investment community;

(c)     professional costs associated with defending against class action lawsuits filed against the Company;

(d)     costs incurred to carry out internal investigations and to prepare and file restated financial statements, including legal fees paid to outside counsel; and

(e)     incurring possible IRS penalties for improperly reporting compensation.

30.     These actions have irreparably damaged Sigma Designs' corporate image and goodwill. For at least the foreseeable future, Sigma Designs will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal

1  behavior and have misled the investing public, such that Sigma Designs' ability to raise equity

2  capital or debt on favorable terms in the future is now impaired.

3  **AIDING AND ABETTING AND CONCERTED ACTION**

4  31.    In committing the wrongful acts alleged herein, Defendants have pursued or joined in

5  the pursuit of a common course of conduct and acted in concert with one another in furtherance of

6  their common plan.

7  32.    During all times relevant hereto, Defendants collectively and individually initiated a

8  course of conduct which was designed to and did: (i) conceal the fact that the Company was

9  allowing its directors and senior officers to divert hundreds of millions of dollars to Sigma Designs

10  insiders and directors and causing Sigma Designs to misrepresent its financial results; (ii) maintain

11  Defendants' executive and directorial positions at Sigma Designs and the profits, power and prestige

12  which Defendants enjoyed as a result of these positions; and (iii) deceive the investing public,

13  including shareholders of Sigma Designs, regarding Defendants' compensation practices and Sigma

14  Designs' financial performance.

15  33.    The purpose and effect of Defendants' common course of conduct was, among other

16  things, to disguise Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross

17  mismanagement, corporate waste and unjust enrichment, to conceal adverse information concerning

18  the Company's operation and financial condition and to artificially inflate the price of Sigma

19  Designs common stock so they could dispose of millions of dollars of their own Sigma Designs

20  stock, and enhance their executive and directorial positions and receive the substantial compensation

21  they obtained as a result thereof.

22  34.    Defendants accomplished their common enterprise and/or common course of conduct

23  by causing the Company to purposefully and/or recklessly engage in the option backdating scheme

24  alleged herein and misrepresent Sigma Designs' financial results.  Each of the Defendants was a

25  direct, necessary, and substantial participant in the common enterprise and/or common course of

26  conduct complained of herein.

27  35.    Each of the Defendants aided and abetted and rendered substantial assistance in the

28  wrongs complained of herein.  In taking such actions to substantially assist the commission of the

1   wrongdoing complained of herein, each Defendant acted with knowledge of the primary

2   wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or

3   her overall contribution to and furtherance of the wrongdoing.

4   **BACKGROUND**

5   36.    Sigma Designs engages in the development, manufacture, and marketing of silicon-

6   based media processors primarily for consumer products.  Its REAL magic video streaming

7   technology is used in various consumer applications providing integrated solutions for decoding of

8   H.264, MPEG-4, MPEG-2, MPEG-1, and Windows Media Video 9.  The Company offers silicon-

9   based media processors for Internet protocol television set-top boxes, digital media receivers, high

10  definition DVD players, high definition television, and portable media players.

11  37.    Throughout the relevant period, Defendants caused Sigma Designs to grant them

12  millions of stock options permitting them to buy Sigma Designs stock for pennies on the dollar

13  which they could in turn sell as the Company's stock price increased.  A stock option gives the

14  holder the right to buy a stock at a certain price in the future.  Typically, companies set that price at

15  the same time their directors approve an option grant, with an exercise price – also known as the

16  "strike price" – usually set at the closing price of the stock that day, the closing price of the night

17  before or by computing an average of the high and low prices on the day of the vote.

18  38.    However, many of the millions of options granted to Sigma Designs' executives had a

19  hidden, valuable component:  they were misdated, often making them even more significantly

20  valuable. The misdated stock option grants fell largely into three categories: (i) "look back" grants,

21  in which the date of the grant was picked retroactively (*e.g.*, a decision in February to pick a January

22  date); (ii) "wait and see" grants, in which a grant date was selected, but the decision was finalized –

23  and sometimes changed – at a later date (*e.g.*, a decision on January 1 to issue a grant on January 15,

24  but there is a period after January 15 in which the grantor waits to see if a more advantageous price

25  occurs and, if one does, uses that later date instead); and (iii) grants where there was a failure to

26  complete the option grant process by the date of the grant (*e.g.*, where there is a decision to issue a

27  grant as of a certain date, but after that date there are changes in the grantees or amounts to grantees,

28

1   and although the work is not complete on those grants as of the stated grant date, that date is

2   nonetheless used).

3                               **STOCK OPTION GRANTS**

4        39.    Certain of Sigma Designs' manipulative stock option grants are described below:

5   **1997 Option Grants**

6        40.    Defendants dated Sigma Designs' 1997 option grants as of April 22, 1997 at $2.31

7   per share – the low of the month when the stock traded as high as $3.50 per share. Defendants Tran,

8   Martinella and Perich received 800,000, 96,382 and 205,000 options, respectively, at this exercise

9   price.

10  **1998 Option Grants**

11       41.    Defendants dated Sigma Designs' 1998 option grants as of March 17, 1998 at $2.91

12  per share – the low of the month when the stock traded between $2.91 and $3.31 per share.

13  Defendants Tran, Perich and Martinella received 200,000, 25,000 and 30,000 options, respectively,

14  at this exercise price.

15  **1999 Option Grants**

16       42.    Defendants dated Sigma Designs' 1999 option grants as of November 1, 1999 at

17  $5.75 per share – the low of the month. The stock traded as high as $8.56 per share in November

18  1999. Moreover, these stock grants, like many of Sigma Designs other stock grants, came

19  immediately before a large increase in the stock price. Sigma Designs' stock achieved its stock price

20  high for the month on November 12, only 8 trading days after the grants were made. Defendant

21  Martinella received 20,000 options at this price.

22  **2000 Option Grants**

23       43.    Defendants dated Sigma Designs' 2000 option grants as of May 31, 2000 at $3.50 per

24  share – the low of the month. The stock traded as high as $4.75 per share in May 2000. Moreover,

25  these stock grants, like many of Sigma Designs other stock grants, came immediately before a large

26  increase in the stock price. Sigma Designs' stock reached $4.31 per share on June 5, 2000, only 2

27  trading days after the grants were made. Defendants Tran, Tsui, Perich, Martinella and Lowe

28

1   received 50,000, 15,000, 25,000, 25,000 and 80,000 options, respectively, at this $3.50 exercise

2   price.

3   **2001 Option Grants**

4          44.     Defendants dated all of Sigma Designs' 2001 option grants as of November 7, 2001 at

5   $1.25 per share – near the low of the month.  The stock traded as high as $1.85 per share in

6   November 2001.  Defendants Tran, Tsui, Perich, Martinella and Lowe received 100,000, 30,000,

7   30,000, 30,000 and 20,000 options, respectively, at this exercise price.

8   **2002 Option Grants**

9          45.     Defendants dated Sigma Designs' 2002 option grants as of October 18, 2002 at $1.69

10  per share – the low of the month.  The stock traded as high as $2.39 per share in October 2002.

11  Defendants Tran, Tsui, Perich, Martinella and Lowe received 120,000, 30,000, 30,000, 30,000 and

12  20,000 options, respectively, at this exercise price.  Each of these grants was not reported in Form 4s

13  by these officers until weeks after the supposed grant date, despite requirements under §403 of the

14  Sarbanes-Oxley Act requiring that changes in ownership be reported within two days.

15  **2003 Option Grants**

16         46.     Defendants dated Sigma Designs' 2003 option grants as of February 20, 2003 at

17  $3.40 per share – the low of the year.  The stock traded as high as $4.00 per share in February 2003.

18  Defendants Tran, Tsui, Perich, Martinella and Lowe received 120,000, 25,000, 25,000, 25,000 and

19  25,000 options, respectively, at this exercise price.  Each of these grants was not reported in Form 4s

20  by these officers until weeks after the supposed grant date, despite requirements under §403 of the

21  Sarbanes-Oxley Act requiring that changes in ownership be reported within two days.

22  **2004 Option Grants**

23         47.     Defendants dated Sigma Designs' 2004 option grants as of August 9, 2004 at $5.43

24  per share – the low of the month.  The stock traded as high as $7.45 per share in August 2004.

25  Defendants Tran, Tsui, Perich, Martinella and Lowe received 150,000, 25,000, 25,000, 30,000 and

26  25,000 options, respectively, at this exercise price.  Each of these grants was not reported in Form 4s

27  by these officers until weeks after the supposed grant date, despite requirements under §403 of the

28  Sarbanes-Oxley Act requiring that changes in ownership be reported within two days.

1    48.    Below are several of Sigma Designs' grants which occurred right before significant

2  stock price increases:



SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 15 -



Sigma Designs, Inc.
February 17, 1998 - April 17, 1998



Sigma Designs, Inc.
October 1, 1999 - December 1, 1999

1



Sigma Designs, Inc.
April 28, 2000 - July 3, 2000

2

3

4

5

6

7

8

9

10

11

12

13

14

15

Sigma Designs, Inc.
October 5, 2001 - December 7, 2001

16

17

18



19

20

21

22

23

24

25

26

27

28

1



**Sigma Designs, Inc.**
**September 18, 2002 - November 18, 2002**

10/18/2002



**Sigma Designs, Inc.**
**January 17, 2003 - March 20, 2003**

2/20/2003

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    49.    Complicating matters and magnifying the harm to Sigma Designs, during the relevant
17 period, Sigma Designs' internal controls and accounting controls with respect to option grants and
18 exercises, and its financial reporting, were grossly inadequate.  The weaknesses allowed dates of
19 both grants and exercises to be manipulated and the Company's executive compensation expenses to
20 be materially understated.  They also allowed grant dates to be changed to provide executives with
21 more favorably priced options, in effect augmenting their compensation, with no benefit running to
22 the Company.

      50.    Specifically, in many instances the reported dates Sigma Designs stock options were
23 granted differed from the dates on which the options appear to have been actually granted.  The
24 practice applied to the overwhelming majority of stock option grants made during the relevant
25 period, which allowed executives and employees to make more money on their options because it set
26 a lower "strike price" at which the options could be exercised, allowing employees to take larger
27 profits when the stock price later rose. *In almost every case of misdating, the price of Sigma*
28

1    ***Designs shares on the reported option-grant date was lower than the share price on the actual day***

2    ***the options were issued.***

3              51.    Through their fiduciary duties of care, good faith and loyalty, Defendants owed to

4    Sigma Designs a duty to ensure that the Company's financial reporting fairly presented, in all

5    material respects, the operations and financial condition of the Company.   In order to adequately

6    carry out these duties, it is necessary for the Defendants to know and understand the material non-

7    public information to be either disclosed or omitted from the Company's public statements.  This

8    material non-public information included the problems Sigma Designs faced because of its deficient

9    internal controls. Furthermore, Defendants who were members of the Audit Committee during the

10   relevant period had a special duty to know and understand this material information as set out in the

11   Audit Committee's charter, which provides that the Audit Committee is responsible for reviewing, in

12   conjunction with management, the Company's policies generally with respect to the Company's

13   earnings press releases and with respect to financial information and earnings guidance provided to

14   analysts and rating agencies.  Moreover, Defendants who were directors of Sigma Designs had

15   ample opportunity to discuss this material information with fellow directors at any of the scores of

16   Board meetings that occurred during the relevant period as well as at committee meetings of the

17   Board.  Despite these duties, Defendants negligently, recklessly, and/or intentionally caused or

18   allowed, by their actions or inactions, the misleading statements to be disseminated by Sigma

19   Designs to the investing public and the Company's shareholders during the relevant period.

20             52.    Specifically, since 1997, Defendants have caused Sigma Designs to report false and

21   misleading fiscal and quarterly financial results which materially understated its compensation

22   expenses and thus overstated its earnings (or understated its losses) as follows:

23

24

25

26

27

28

| FISCAL YEAR | REPORTED OPERATING EARNINGS (LOSS) (IN MILLIONS) | REPORTED DILUTED EARNINGS (LOSS) PER SHARE FROM CONTINUING OPERATIONS |
|---|---|---|
| 1997 | $1.53 | $0.14 |
| 1998 | $(5.08) | $(0.51) |
| 1999 | $(0.15) | $(0.21) |
| 2000 | $2.35 | $0.13 |
| 2001 | $(6.87) | $(0.42) |
| 2002 | $(10.39) | $(0.64) |
| 2003 | $(6.06) | $(0.37) |
| 2004 | $1.54 | $0.07 |
| 2005 | $1.84 | $0.08 |
| 2006 | $1.88 | $0.08 |

53.    Moreover, throughout the relevant period certain of the Defendants and former officers exercised many of these stock options contributing to their ability to sell over $15.4 million worth of Sigma Designs stock they obtained often by cashing in under-priced stock options:

| DEFENDANT | DATES OF SALES | SHARES SOLD | PROCEEDS RECEIVED |
|---|---|---|---|
| PERICH | 06/13/96-12/21/05 | 230,000 | $2,609,725 |
| LOWE | 09/20/05 | 6,000 | $64,893 |
| MARTINELLA | 01/12/00-03/31/06 | 88,666 | $947,641 |
| ALMON | 09/01/04-11/28/05 | 83,000 | $1,096,550 |
| TRAN | 09/17/96-08/18/06 | 582,797 | $6,144,427 |
| NGUYEN | 03/11/96-09/19/05 | 560,625 | $4,423,231 |
| TSAI | 09/22/05-09/23/05 | 15,000 | $157,700 |
| | | | |
| **TOTAL** | | **1,566,088** | **$15,444,167** |

54.    On July 26, 2006, Sigma Designs announced that the SEC had begun investigating it due to its stock-option granting practices:

> Sigma further announced that it has received a letter of informal inquiry from the Securities and Exchange Commission (SEC) requesting certain documents relating to the Company's stock option grants and practices. The letter from the SEC states that this informal inquiry should not be construed as an indication by the SEC or its staff that any violation of law has occurred, or as an adverse reflection upon any person, entity or security. Sigma intends to cooperate fully with the SEC request.

> Sigma also announced that the Audit Committee of its Board of Directors previously commenced an internal review, assisted by outside legal counsel, relating to past stock option grants, the timing of such grants and related accounting matters.

55.    In effect, during the relevant period, the Defendants caused Sigma Designs' shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements

1    regarding the Company's financial statements, business and prospects. Specifically, Defendants

2    caused or allowed Sigma Designs to issue statements that failed to disclose or misstated the

3    following:  (i) that the Company had problems with its internal controls that prevented it from

4    issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-

5    based compensation expenses the Company's financial results violated GAAP; and (iii) that the

6    Company's public disclosures presented an inflated view of Sigma Designs' earnings and earnings

7    per share.

8                          **DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

9              56.      Plaintiff brings this action derivatively in the right and for the benefit of Sigma

10   Designs to redress injuries suffered and to be suffered by Sigma Designs as a direct result of

11   Defendants' violations of state and federal law, breaches of fiduciary duty, abuse of control,

12   constructive fraud, gross mismanagement, corporate waste and unjust enrichment, as well as the

13   aiding and abetting thereof, by the Defendants.  This is not a collusive action to confer jurisdiction

14   on this Court which it would not otherwise have.

15             57.      Plaintiff will adequately and fairly represent the interests of Sigma Designs and its

16   shareholders in enforcing and prosecuting its rights.

17             58.      Plaintiff is an owner of Sigma Designs stock and was an owner of Sigma Designs

18   stock during times relevant to Defendants' illegal and wrongful course of conduct alleged herein.

19             59.      Based upon the facts set forth throughout this Complaint, applicable law and the

20   longstanding rule that equity does not compel a useless and futile act, a pre-filing demand upon the

21   Sigma Designs Board of Directors to institute this action against the officers and members of the

22   Sigma Designs Board of Directors is excused as futile.  A pre-filing demand would be a useless and

23   futile act because:

24                       (a)      The members of Sigma Designs' Board have demonstrated their

25   unwillingness and/or inability to act in compliance with their fiduciary obligations and/or to sue

26   themselves and/or their fellow directors and allies in the top ranks of the corporation for the

27   violations of law complained of herein.  These are people they have developed professional

28   relationships with, who are their friends and with whom they have entangling financial alliances,

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 22 -

1    interests and dependencies, and therefore, they are not able to and will not vigorously prosecute any

2    such action.

3                    (b)        The Sigma Designs Board of Directors and senior management participated

4    in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts

5    to conceal or disguise those wrongs from Sigma Designs' stockholders or recklessly and/or

6    negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties.

7    As a result of their access to and review of internal corporate documents, or conversations and

8    connections with other corporate officers, employees, and directors and attendance at management

9    and/or Board meetings, each of the Defendants knew the adverse non-public information regarding

10   the improper stock option grants and financial reporting.  Pursuant to their specific duties as Board

11   members, the Director Defendants are charged with the management of the Company and to conduct

12   its business affairs.  Defendants breached the fiduciary duties that they owed to Sigma Designs and

13   its shareholders in that they failed to prevent and correct the improper stock option granting and

14   financial reporting.  Certain directors are also dominated and controlled by other directors and

15   cannot act independently of them.  Thus, the Sigma Designs Board cannot exercise independent

16   objective judgment in deciding whether to bring this action or whether to vigorously prosecute this

17   action because each of its members participated personally in the wrongdoing or are dependent upon

18   other Defendants who did.

19                   (c)        The acts complained of constitute violations of the fiduciary duties owed by

20   Sigma Designs' officers and directors and these acts are incapable of ratification.

21                   (d)        The members of Sigma Designs' Board have benefited, and will continue to

22   benefit, from the wrongdoing herein alleged and have engaged in such conduct to preserve their

23   positions of control and the perquisites derived thereof, and are incapable of exercising independent

24   objective judgment in deciding whether to bring this action.

25                   (e)        Any suit by the current directors of Sigma Designs to remedy these wrongs

26   would likely further expose the liability of Defendants under the federal securities laws, which could

27   result in additional civil and/or criminal actions being filed against one or more of the Defendants,

28

1  thus, they are hopelessly conflicted in making any supposedly independent determination whether to

2  sue themselves.

3        (f)     Sigma Designs has been and will continue to be exposed to significant losses

4  due to the wrongdoing complained of herein, yet the current Board has not filed any lawsuits against

5  itself or others who were responsible for that wrongful conduct to attempt to recover for Sigma

6  Designs any part of the damages Sigma Designs suffered and will suffer thereby.

7        (g)     In order to properly prosecute this lawsuit, it would be necessary for the

8  directors to sue themselves and the other Defendants, requiring them to expose themselves and their

9  comrades to millions of dollars in potential civil liability and criminal sanctions, or IRS penalties.

10  This they will not do.

11        (h)     Sigma Designs' current and past officers and directors are protected against

12  personal liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in this

13  Complaint by directors' and officers' liability insurance which they caused the Company to purchase

14  for their protection with corporate funds, *i.e.,* monies belonging to the stockholders of Sigma

15  Designs.  However, due to certain changes in the language of directors' and officers' liability

16  insurance policies in the past few years, the directors' and officers' liability insurance policies

17  covering the Defendants in this case contain provisions which eliminate coverage for any action

18  brought directly by Sigma Designs against these Defendants, known as, *inter alia,* the "insured

19  versus insured exclusion."  As a result, if these directors were to sue themselves or certain of the

20  officers of Sigma Designs, there would be no directors' and officers' insurance protection and thus,

21  this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought

22  derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the

23  Company to effectuate a recovery.

24        (i)     In order to bring this action for breaching their fiduciary duties, the members

25  of the Sigma Designs Board would have been required to sue themselves and/or their fellow

26  directors and allies in the top ranks of the Company, who are their personal friends and with whom

27  they have entangling financial alliances, interests and dependencies, which they would not do.

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS   - 24 -

60.     Plaintiff has not made any demand on shareholders of Sigma Designs to institute this action since such demand would be a futile and useless act for the following reasons:

(a)     Sigma Designs is a publicly traded company with approximately 22.8 million shares outstanding, and thousands of shareholders;

(b)     Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c)     Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT ON SIGMA DESIGNS' FINANCIAL STATEMENTS

**The Fiscal 1997 Form 10-K**

On or about May 1, 1997, the Company filed its fiscal 1997 Form 10-K with the SEC. The fiscal 1997 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 1997 Form 10-K included Sigma Designs' fiscal 1997 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Sigma Designs' compensation expense was understated and its net earnings were overstated.

**The Fiscal 1998 Form 10-K**

On or about May 1, 1998, the Company filed its fiscal 1998 Form 10-K with the SEC. The fiscal 1998 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 1998 Form 10-K included Sigma Designs' fiscal 1998 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, Sigma Designs' compensation expense was understated and its net earnings were overstated.

**The Fiscal 1999 Form 10-K405**

61.     On or about May 3, 1999, the Company filed its fiscal 1999 Form 10-K405 with the SEC. The fiscal 1999 Form 10-K405 was simultaneously distributed to shareholders and the public. The fiscal 1999 Form 10-K405 included Sigma Designs' fiscal 1999 financial statements which were

1  materially false and misleading and presented in violation of GAAP, due to its improper accounting

2  for the backdated stock options. As a result, Sigma Designs' compensation expense was understated

3  and its net earnings were overstated.

4  **The Fiscal 2000 Form 10-K**

5      62.    On or about April 28, 2001, the Company filed its fiscal 2000 Form 10-K with the

6  SEC. The fiscal 2000 Form 10-K was simultaneously distributed to shareholders and the public.

7  The fiscal 2000 Form 10-K included Sigma Designs' fiscal 2000 financial statements which were

8  materially false and misleading and presented in violation of GAAP, due to its improper accounting

9  for the backdated stock options. As a result, Sigma Designs' compensation expense was understated

10  and its net earnings were overstated.

11  **The Fiscal 2001 Form 10-K**

12      63.    On or about May 4, 2001, the Company filed its fiscal 2001 Form 10-K with the SEC.

13  The fiscal 2001 Form 10-K was simultaneously distributed to shareholders and the public. The

14  fiscal 2001 Form 10-K included Sigma Designs' fiscal 2001 financial statements which were

15  materially false and misleading and presented in violation of GAAP, due to its improper accounting

16  for the backdated stock options. As a result, Sigma Designs' compensation expense was understated

17  and its net earnings were overstated.

18  **The Fiscal 2002 Form 10-K**

19      64.    On or about May 2, 2002, the Company filed its fiscal 2002 Form 10-K with the SEC.

20  The fiscal 2002 Form 10-K was simultaneously distributed to shareholders and the public. The

21  fiscal 2002 Form 10-K included Sigma Designs' fiscal 2002 financial statements which were

22  materially false and misleading and presented in violation of GAAP, due to improper accounting for

23  the backdated stock options. As a result, Sigma Designs' compensation expense was understated

24  and its net earnings were overstated.

25  **The Fiscal 2003 Form 10-K**

26      65.    On or about April 28, 2003, the Company filed its fiscal 2003 Form 10-K with the

27  SEC. The fiscal 2003 Form 10-K was simultaneously distributed to shareholders and the public.

28  The fiscal 2003 Form 10-K included Sigma Designs' fiscal 2003 financial statements which were

1   materially false and misleading and presented in violation of GAAP, due to improper accounting for

2   the backdated stock options. As a result, Sigma Designs' compensation expense was understated

3   and its net earnings were overstated.

4   **The Fiscal 2004 Form 10-K**

5        66.    On or about April 15, 2004, the Company filed its fiscal 2004 Form 10-K with the

6   SEC. The fiscal 2004 Form 10-K was simultaneously distributed to shareholders and the public.

7   The fiscal 2004 Form 10-K included Sigma Designs' fiscal 2004 financial statements which were

8   materially false and misleading and presented in violation of GAAP, due to improper accounting for

9   the backdated stock options. As a result, Sigma Designs' compensation expense was understated

10   and its net earnings were overstated.

11   **The Fiscal 2005 Form 10-K**

12        67.    On or about April 14, 2005, the Company filed its fiscal 2005 Form 10-K with the

13   SEC. The fiscal 2005 Form 10-K was simultaneously distributed to shareholders and the public.

14   The fiscal 2005 Form 10-K included Sigma Designs' fiscal 2005 financial statements which were

15   materially false and misleading and presented in violation of GAAP, due to improper accounting for

16   the backdated stock options. As a result, Sigma Designs' compensation expense was understated

17   and its net earnings were overstated.

18   **The Fiscal 2006 Form 10-K**

19        68.    On or about May 8, 2006, the Company filed its fiscal 2006 Form 10-K with the SEC.

20   The fiscal 2006 Form 10-K was simultaneously distributed to shareholders and the public. The

21   fiscal 2006 Form 10-K included Sigma Designs' fiscal 2006 financial statements which were

22   materially false and misleading and presented in violation of GAAP, due to improper accounting for

23   the backdated stock options. As a result, Sigma Designs' compensation expense was understated

24   and its net earnings were overstated.

25            **DEFENDANTS' SCHEME BEGINS TO UNRAVEL**

26        69.    The 1997-2005 Proxy Statements concealed Defendants' option backdating scheme.

27   Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when voting on

28   proxy proposals between 1997 and 2005. In fact, it was not until the Company's announcement in

1   July 2006 disclosing its ongoing internal probe and the SEC investigation that shareholders learned

2   that the Proxy Statements which they had relied upon for years were false and misleading.

3   Defendants have been unjustly enriched at the expense of Sigma Designs, which has received and

4   will receive less money from the Defendants when they exercise their options at prices substantially

5   lower than they would have if the options had not been backdated.

6        70.     Each dollar diverted to Defendants via the option backdating scheme has come at the

7   expense of the Company.  For example, if Tran's 150,000 options granted in August 2004 had not

8   been manipulated, but rather had a strike price of $7 per share, which was the trading price only days

9   after the options grant date, instead of the $5.43 per share strike price, which was the trading low for

10   the month, when Tran exercised those options the Company would receive $1.05 million instead of

11   $814,500 – *a cost to the Company of $235,000 for this single instance of option backdating*.

12                       **THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT**

13        71.     Unlike most companies which avoid such option backdating abuse by issuing stock

14   option grants at the same time each year, which eliminates the potential for backdating, Defendants

15   ensured that executives would not have any such restrictions.  Given the many times Sigma Designs'

16   grants were the low of the month in which options were granted, the date of their stock option grants

17   was clearly more than merely coincidental.

18        72.     As a result of the backdating of options, Defendants have been unjustly enriched at

19   the expense of Sigma Designs, which has received and will receive less money from Defendants

20   when they exercise their options at prices substantially lower than they would have if the options had

21   not been backdated.

22                         **TOLLING OF THE STATUTE OF LIMITATIONS**

23        73.     The Counts alleged herein are timely.  As an initial matter, Defendants wrongfully

24   concealed their manipulation of the stock option plans, through strategic timing and fraudulent

25   backdating, by issuing false and misleading Proxy Statements, by falsely reassuring Sigma Designs'

26   public investors that Sigma Designs' option grants were being administered by a committee of

27   independent directors, and by failing to disclose that backdated options were, in fact, actually issued

28   on dates other than those disclosed, and that strategically timed option grants were issued based on

1   the manipulation of insider information that ensured that the true fair market value of the Company's

2   stock was, in fact, higher than the publicly traded price on the date of the option grant.

3        74.    Sigma Designs' public investors had no reason to know of the Defendants' breaches

4   of their fiduciary duties until July 2006, when the Company announced the SEC and internal

5   investigations.

6        75.    Finally, as fiduciaries of Sigma Designs and its public shareholders, the Defendants

7   cannot rely on any limitations defense where they withheld from Sigma Designs' public shareholders

8   the facts that give rise to the claims asserted herein, *i.e.,* that the Sigma Designs Board had abdicated

9   its fiduciary responsibilities to oversee the Company's executive compensation practices, and that

10   the option grant dates had been manipulated to maximize the profit for the grant recipients and,

11   accordingly, to maximize the costs for the Company.

12   ### COUNT I

13   ### Violations of §14(a) of the Exchange Act Against
### All Defendants

14

15        76.    Plaintiff incorporates by reference and realleges each and every allegation set forth

16   above, as though fully set forth herein.

17        77.    Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no

18   proxy statement shall contain "any statement which, at the time and in the light of the circumstances

19   under which it is made, is false or misleading with respect to any material fact, or which omits to

20   state any material fact necessary in order to make the statements therein not false or misleading." 17

21   C.F.R. §240.14a-9.

22        78.    The 1997-2005 Proxy Statements violated §14(a) and Rule 14a-9 because they

23   omitted material facts, including the fact that certain of the Defendants were causing Sigma Designs

24   to engage in an option backdating scheme, a fact which Defendants were aware of and participated

25   in from at least 1997.

26        79.    In the exercise of reasonable care, Defendants should have known that the Proxy

27   Statements were materially false and misleading.

28

1    80.    The misrepresentations and omissions in the Proxy Statements were material to

2   plaintiff in voting on each Proxy Statement.  The Proxy Statements were an essential link in the

3   accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as

4   revelations of the truth would have immediately thwarted a continuation of shareholders'

5   endorsement of the directors' positions, the executive officers' compensation and the Company's

6   compensation policies.

7    81.    The Company was damaged as a result of the material misrepresentations and

8   omissions in the Proxy Statements.

9                                          **COUNT II**

10                                          **Accounting**

11    82.    Plaintiff incorporates by reference and realleges each and every allegation set forth

12   above, as though fully set forth herein.

13    83.    At all relevant times, Defendants, as directors and/or officers of Sigma Designs, owed

14   the Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

15    84.    In breach of their fiduciary duties owed to Sigma Designs and its shareholders, the

16   Defendants caused Sigma Designs, among other things, to grant backdated stock options to

17   themselves and/or certain other officers and directors of Sigma Designs and/or failed to properly

18   investigate whether these grants had been improperly made.  By this wrongdoing, the Defendants

19   breached their fiduciary duties owed to Sigma Designs and its shareholders.

20    85.    The Defendants possess complete and unfettered control over the improperly issued

21   stock option grants and the books and records of the Company concerning the details of such

22   improperly backdated stock option grants to certain of the Defendants.

23    86.    As a result of Defendants' misconduct, Sigma Designs has been substantially injured

24   and damaged financially and is entitled to a recovery as a result thereof, including the proceeds of

25   those improperly granted options which have been exercised and sold.

26    87.    Plaintiff demands an accounting be made of all stock option grants made to any of the

27   Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the

28   value of the grants, the recipients of the grants, the exercise date of stock options granted to any of

the Defendants, as well as the disposition of any proceeds received by any of the Defendants via sale or other exercise of backdated stock option grants received by those Defendants.

## COUNT III

### Breach of Fiduciary Duty and/or Aiding and Abetting
### Against All Defendants

88.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

89.     Each of the Defendants agreed to and did participate with Tran and Tsui and the other Defendants and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of fiduciary duties the Defendants owed to the Company.

90.     The Defendants have violated fiduciary duties of care, loyalty, candor and independence owed to Sigma Designs and its public shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the interests of Sigma Designs and its shareholders.

91.     As demonstrated by the allegations above, Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to Sigma Designs and its public shareholders, and they failed to disclose material information and/or made material misrepresentations to shareholders regarding Defendants' option backdating scheme.

92.     By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Sigma Designs and its public shareholders.

93.     As a proximate result of Defendants' conduct, in concert with Tran and Tsui, Sigma Designs has been injured and is entitled to damages.

## COUNT IV

### Abuse of Control Against All Defendants

94.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

95.     The Defendants employed the alleged scheme for the purpose of maintaining and entrenching themselves in their positions of power, prestige and profit at, and control over, Sigma Designs, and to continue to receive the substantial benefits, salaries and emoluments associated with their positions at Sigma Designs.  As a part of this scheme, Defendants actively made and/or participated in the making of or aided and abetted the making of, misrepresentations regarding Sigma Designs.

96.     Defendants' conduct constituted an abuse of their ability to control and influence Sigma Designs.

97.     By reason of the foregoing, Sigma Designs has been damaged.

## COUNT V

### Gross Mismanagement Against All Defendants

98.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

99.     Defendants had a duty to Sigma Designs and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Sigma Designs.

100.    Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Sigma Designs in a manner consistent with the duties imposed upon them by law.  By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of Sigma Designs' affairs and in the use and preservation of Sigma Designs' assets.

101.    During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Sigma Designs to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Sigma Designs, thus breaching their duties to the Company.  As a result, Defendants grossly mismanaged Sigma Designs.

102.    By reason of the foregoing, Sigma Designs has been damaged.

FILED
06 NOV -6 PM 12:20

## COUNT VI

### Constructive Fraud Against All Defendants

103.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

104.    As corporate fiduciaries, Defendants owed to Sigma Designs and its shareholders a duty of candor and full accurate disclosure regarding the true state of Sigma Designs' business and assets and their conduct with regard thereto.

105.    As a result of the conduct complained of, Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from Sigma Designs' shareholders despite their duties to, *inter alia,* disclose the true facts regarding their stewardship of Sigma Designs.  Thus they have committed constructive fraud and violated their duty of candor.

106.    By reason of the foregoing, Sigma Designs has been damaged.

## COUNT VII

### Corporate Waste Against All Defendants

107.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

108.    By failing to properly consider the interests of the Company and its public shareholders, by failing to conduct proper supervision, and by giving away millions of dollars to Defendants via the option backdating scheme, Defendants have caused Sigma Designs to waste valuable corporate assets.

109.    As a result of Defendants' corporate waste, they are liable to the Company.

## COUNT VIII

### Unjust Enrichment Against All Defendants

110.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

111.    As a result of the conduct described above, Defendants will be and have been unjustly enriched at the expense of Sigma Designs, in the form of unjustified salaries, benefits, bonuses, stock option grants and other emoluments of office.

112.    All the payments and benefits provided to the Defendants were at the expense of Sigma Designs.  The Company received no benefit from these payments.  Sigma Designs was damaged by such payments.

113.    Certain of the Defendants sold Sigma Designs stock for a profit during the period of deception, misusing confidential non-public corporate information.  These Defendants should be required to disgorge the gains which they have and/or will otherwise unjustly obtain at the expense of Sigma Designs.  A constructive trust for the benefit of the Company should be imposed thereon.

## COUNT IX

### Against the Officer Defendants for Rescission

114.    Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

115.    As a result of the acts alleged herein, the stock option contracts between the Officer Defendants and Sigma Designs entered into during the relevant period were obtained through Defendants' fraud, deceit, and abuse of control.  Further, the backdated stock options were illegal grants and thus invalid as they were not authorized in accordance with the terms of the publicly filed contracts regarding the Officer Defendants' employment agreement and the Company's stock option plan which was also approved by Sigma Designs shareholders and filed with the SEC.

116.    All contracts which provide for stock option grants between the Officer Defendants and Sigma Designs and were entered into during the relevant period should, therefore, be rescinded, with all sums paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void.

## COUNT X

### Against the Insider Selling Defendants for Violation of California Corporations Code §25402

117.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

118.    At the time that the Insider Selling Defendants sold their Sigma Designs common stock as set forth herein at ¶53, by reason of their high executive and/or directorial positions with

Sigma Designs, the Insider Selling Defendants had access to highly material information regarding the Company, including the information set forth herein regarding the true adverse facts of Sigma Designs' improper accounting.

119.   At the time of such sales, that information was not generally available to the public or the securities markets. Had such information been generally available, it would have significantly reduced the market price of Sigma Designs shares at that time.

120.   The Insider Selling Defendants, and each of them, had actual knowledge of material, adverse non-public information and thus sold their Sigma Designs common stock in California in violation of California Corporations Code §25402.

121.   Pursuant to California Corporations Code §25502.5, the Insider Selling Defendants, and each of them, are liable to Sigma Designs for damages in an amount up to three times the difference between the price at which Sigma Designs common stock was sold by these defendants, and each of them, and the market value which that Sigma Designs common stock would have had at the time of the sale if the information known to these defendants, and each of them, had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

### COUNT XI

#### Against the Insider Selling Defendants for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

122.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

123.   At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold Sigma Designs common stock on the basis of such information.

124.   The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects. It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Sigma Designs common stock.

125.   At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated. The Insider Selling Defendants' sales of Sigma Designs common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

126.   Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.   Awarding money damages against all Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, to ensure Defendants do not participate therein or benefit thereby;

B.   Directing all Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds and imposing a constructive trust thereon;

C.   Directing Sigma Designs to take all necessary actions to reform and improve its corporate governance and internal control procedures to comply with applicable law, including, but not limited to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote adoption of the following Corporate Governance policies:

(i)   a proposal requiring that the office of CEO of Sigma Designs and Chairman of the Sigma Designs Board of Directors be permanently held by separate individuals and that the Chairman of the Sigma Designs Board meets rigorous "independent" standards;

(ii)   a proposal to strengthen the Sigma Designs Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

(iii)   appropriately test and then strengthen the internal audit and control function;

1            (iv)    rotate independent auditing firms every five years;

2            (v)    control and limit insider stock selling and the terms and timing of stock option

3 grants; and

4            (vi)    reform executive compensation.

5     D.    Ordering the imposition of a constructive trust over Defendants' stock options and

6 any proceeds derived therefrom;

7     E.    Awarding punitive damages;

8     F.    Awarding costs and disbursements of this action, including reasonable attorneys',

9 accountants', and experts' fees; and

10     G.    Granting such other and further relief as this Court may deem just and proper.

11 **JURY DEMAND**

12     Plaintiff demands a trial by jury.

13 DATED:  November 6, 2006            LERACH COUGHLIN STOIA GELLER

14                           RUDMAN & ROBBINS LLP
                       SHAWN A. WILLIAMS

15

16                           SHAWN A. WILLIAMS

17

18                         100 Pine Street, Suite 2600
                       San Francisco, CA  94111
                       Telephone:  415/288-4545

19                        415/288-4534 (fax)

20                         LERACH COUGHLIN STOIA GELLER

21                           RUDMAN & ROBBINS LLP
                       WILLIAM S. LERACH
                       DARREN J. ROBBINS

22                         TRAVIS E. DOWNS III
                       655 West Broadway, Suite 1900

23                        San Diego, CA  92101-3301
                       Telephone:  619/231-1058

24                        619/231-7423 (fax)

25                       Attorneys for Plaintiff

26 S:\CptDraft\Derivative\Cpt Sigma Designs Derv.doc

27

28

1

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

2          Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3     named parties, there is no such interest to report.

4

5

6                                          ATTORNEY OF RECORD FOR PLAINTIFF
                                           JOHN J. RANIERI
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIGMA DESIGNS, INC. VERIFICATION

I, John J. Ranieri, hereby verify, under penalty of perjury, that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.

DATE: _10/31/06_

SIGNATURE